**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**BROWN, and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**October 23, 2023**

# In the Court of Appeals of Georgia

A23A1009. FIELDS v. RAINBOW COMMUNITY CENTER, INC. et al.

McFADDEN, Presiding Judge.

R. F. was falsely imprisoned and raped by a fellow resident of a homeless shelter. She filed this action against the operator of the shelter and its executive director, alleging claims for premises liability and breach of contract. The trial court granted the defendants' motion for summary judgment. The court held that R. F. failed to point to evidence creating a question of fact on the issue of whether the crimes against her were foreseeable and had presented no evidence of proximate causation. The court did not address R. F.'s breach of contract claim. R. F. appeals.

We hold that R. F. has pointed to some evidence creating a question of fact on the issues of foreseeability and proximate causation, so we reverse the grant of

summary judgment on her premises liability claim. The trial court did not address R. F.'s separate breach of contract claim. So we vacate the grant of summary judgment on that claim and remand for further proceedings.

1. *Factual and procedural background*.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. . . ." OCGA § 9-11-56 (c). A defendant may demonstrate that there is no genuine issue of material fact so that it is entitled to judgment as a matter of law "by either presenting evidence negating an essential element of the plaintiff's claims or establishing from the record an absence of evidence to support such claims." *Cowart v. Widener*, 287 Ga. 622, 623 (1) (a) (697 SE2d 779) (2010) (citation and punctuation omitted). We review the grant of a motion for summary judgment de novo, viewing "the evidence, and all reasonable inferences drawn therefrom, in the light most favorable to the nonmovant." Id. at 624 (1) (a) (citation and punctuation omitted).

So viewed, the record shows that defendant Rainbow Community Center, Inc. operates a homeless shelter, and defendant Clara Lett is the shelter's executive

2

director (collectively, "Rainbow"). Rainbow participates in the Georgia Reentry Program, which provides housing to qualified individuals under parole supervision of the Georgia Department of Community Supervision. See OCGA §§ 42-2-5.2 (b), 42-3-3 (a) (3). In addition to the Reentry Program residents, the shelter provides housing to other homeless people, including families with children and disabled people.

R. F., who is physically and cognitively disabled, was 19 years old at the time of the crimes against her and had been living with her mother. Adult Protective Services became involved with R. F. in August 2016 as a result of allegations of neglect.

When an Adult Protective Services caseworker and her supervisor spoke with R. F., she told them that she did not want to stay at her mother's residence. They secured a spot for R. F. at Rainbow's homeless shelter; R. F. accepted the spot; and the supervisor drove her to the shelter.

About two weeks after R. F. began staying at the shelter, R. F. was raped and falsely imprisoned by Roy Elling Hunter Jr., another resident of the shelter. (We affirmed Hunter's convictions in an unpublished opinion, *Hunter v. State*, 353 Ga. App. XXVII (Jan. 17, 2020) (unpublished)). R. F. got into Hunter's truck because he

3

told her he would take her to get a Coke. He drove her to a restaurant but they only sat in the truck and talked. Hunter then drove her back to Rainbow. R. F. told Hunter that she wanted to go inside, but he would not let her. While they were sitting in the truck, Hunter raped her.

Hunter had become a resident of the shelter as part of the Georgia Reentry Program. He previously had been convicted of and imprisoned for voluntary manslaughter. Hunter was paroled in June 2015 and placed at Rainbow. Rainbow did not know the nature of Hunter's — or any other Reentry Program residents' — crime (other than the fact that they were not sex offenders). Rainbow did not conduct background checks or screen the Reentry Program residents, some of whom may have committed violent crimes. It relied on the state's process for screening inmates as being eligible for parole. See OCGA § 42-9-40 (a) ("The [Board of Pardon and Paroles] shall adopt, implement, and maintain a parole guidelines system [which] shall be consistent with the board's primary goal of protecting society and shall take into consideration the severity of the current offense, the inmate's prior criminal history, the inmate's conduct, and the social factors which the board has found to have value in predicting the probability of further criminal behavior and successful adjustment under parole supervision.").

Rainbow required the residents to sign documents setting out the shelter's rules, which included rules that prohibited physical contact and violent contact between residents. But the only enforcement of the rules was the residents' signature attesting that they would honor them. At the time of the crimes against R. F., Rainbow had no security.

Prior to Hunter's crime, there had never been another crime committed by a Reentry Program resident nor any violent crime, other than an assault in 2008. In the 2008 incident, a resident of the shelter assaulted Lett. Although Lett was the victim of the assault, she was arrested, but that charge was ultimately dismissed.

In a prior appeal of the grant of Rainbow's motion for summary judgment, we held that it appeared that the trial court had granted the motion based on less than the complete record. *Fields v. Rainbow Community Center, Inc.*, 366 Ga. App. ___ (Dec. 7, 2022). So we vacated the order granting summary judgment and remanded the case to the trial court to consider the full record before entering a new decision. Id.

On remand, the trial court considered the record, and again, granted summary judgment to Rainbow. Terri Fields, R. F.'s conservator who is prosecuting this action on her behalf, see OCGA § 9-11-17 (a), then filed this appeal.

2. *Consideration of the full record.*

5

Fields argues that the trial court erred in granting summary judgment because, yet again, the court failed to consider the full record. But in the order granting summary judgment, the trial court explicitly stated that he had "now reviewed the depositions [in the record of five witnesses, including Fields's security expert] and [had] reread the deposition of Clara Lett."

It is true, as Fields argues, that the court included in his re-entered order the statement from his prior order that, "The court notes [Fields's security expert's] deposition was cited, but as stated earlier, not filed with the court." Relying on "the presumption in favor of the regularity and legality of all proceedings in the trial court[,]" *Nix v. State*, 354 Ga. App. 47, 58 (8) (839 SE2d 687) (2020) (citation and punctuation omitted), we construe this sentence as a misstatement, given that the trial court explicitly stated that he had reviewed that deposition in accordance with our direction in the prior opinion of this case. Fields has not shown reversible error in this regard.

3. *Premises liability*.

Fields argues that the trial court erred in granting summary judgment on the premises liability claim. We agree.

(a) *Duty*.

6

In *Ga. CVS Pharmacy v. Carmichael*, 316 Ga. 718 (890 SE2d 209) (2023), our Supreme Court addressed "the scope and nature of the liability faced by premises owners [and] occupiers . . . in cases involving personal injuries arising from third-party criminal conduct[,]" clarifying the standards to be applied. Id. at 718. The court first addressed how foreseeability relates to the issue of duty, explaining that "a proprietor necessarily owes a duty to invitees to exercise ordinary care to keep his premises reasonably safe, see OCGA § 51-3-1; whether that duty of ordinary care embraces the specific duty to protect invitees against third-party criminal conduct hinges on foreseeability." Id. at 722 (II) (A) (footnote omitted). In other words, "the foreseeability of the criminal act [against an invitee] informs whether the proprietor's duty of ordinary care owed pursuant to OCGA § 51-3-1 encompasses the duty to keep invitees safe from third-party criminal conduct." Id. at 722 (II) (A). "If the place or character of his business, or his past experience, is such that he should reasonably anticipate careless or criminal conduct on the part of third persons, either generally or at some particular time, [a proprietor] may be under a duty to take precautions against it[.]" Restatement (Second) of Torts § 344 cmt. f (1965) (cited by *Ga. CVS*, 316 Ga. at 722 (II) (A)). "But without foreseeability that a criminal act will occur, no

7

duty on the part of the proprietor to exercise ordinary care to prevent that act arises.*"
*Ga. CVS*, 316 Ga. at 722 (II) (A) (citation and punctuation omitted).

The court also explained that the question of reasonable foreseeability is determined by the totality of the circumstances and does not depend on the existence of substantially similar prior crimes:

> the relevant question . . . is . . . whether the totality of the circumstances establish[es] reasonable foreseeability such that the proprietor has a duty to guard against that criminal activity. While evidence of substantially similar prior crimes — crimes with a likeness, proximity, or other relationship to the criminal act at issue that give a proprietor reason to anticipate such an act occurring on the premises — may often be one of the most probative considerations in answering that question, it is not a required consideration, and other circumstances may be relevant, too. And unless the court determines that no rational juror could disagree on the answer, that question is one for the jury.

*Ga. CVS*, 316 Ga. at 732 (II) (C). The court stated that there is no "bright-line rule that only certain, specific kinds of evidence must be shown to establish foreseeability, especially because an inquiry under the totality of the circumstances is necessarily case-specific." *Ga. CVS*, 316 Ga. at 728 (II) (C). In some cases, the court held, a plaintiff can establish reasonable foreseeability without pointing to substantially similar prior crimes: "evidence of substantially similar prior crimes is not a

requirement for finding reasonable foreseeability[;] other evidence that the proprietor knew of the danger can inform the analysis, too." *Ga. CVS*, 316 Ga. at 735 (II) (D).

Here, relying on *Sturbridge Partners v. Walker*, 267 Ga. 785 (482 SE2d 339) (1997), the trial court held that Fields failed to present evidence that the acts against R. F. were "substantially similar in type to the previous criminal activities occurring on or near the premises. . . ." (quoting *Sturbridge*, 267 Ga. at 786). Under this standard, the court held, Hunter's criminal acts against R. F. were not reasonably foreseeable. The court noted that the only evidence of prior crime at the premises was the 2008 assault. That assault, the court held, did not create a genuine issue of material fact because it was a single event and it was not substantially similar to the crimes against R. F. The court also noted that Hunter's prior conviction for voluntary manslaughter occurred 20 years before and was not substantially similar.

But as Fields argued below — and our Supreme Court affirmed in *Ga. CVS*, 316 Ga. 718 — proving substantially similar prior crimes is not the only way to establish foreseeability. Fields pointed to evidence that at the time of the crimes against R. F., many residents of Rainbow were recently released convicted felons; that Rainbow did not exclude parolees with violent criminal histories; that Rainbow provided housing to other homeless people, including families with children and

9

disabled people; yet Rainbow had no security at the premises. The question of "whether the totality of the circumstances establish[es] reasonable foreseeability such that [Rainbow had] a duty to guard against [Hunter's] criminal activity . . . is one for the jury." *Ga. CVS*, 316 Ga. at 732 (II) (C). See *Stephens v. Greensboro Properties*, 247 Ga. App. 670, 673-674 (1) (a) (544 SE2d 464) (2001) (evidence that defendant allowed person with "a long history of convictions and arrests for numerous violent crimes" to become a resident and employee of defendant's apartment complex created a jury question on the issue of whether person's assault of plaintiffs' decedent was foreseeable), overruled in part on other grounds by *TGM Ashley Lakes v. Jennings*, 264 Ga. App. 456, 462 (1) (590 SE2d 807) (2003).

(b) *Proximate cause.*

As an alternate ground for summary judgment, the trial court held that "there is no evidence that the defendants' conduct was the proximate cause of the injuries to plaintiff." We hold that Fields presented at least some evidence on this issue.

Fields's expert witness on the issue of security testified that, had Rainbow had a security officer on the premises at the time of the crimes against R. F., the officer's presence would have deterred activity that violated the shelter's rules — which prohibited physical contact and violent contact between residents — because the

10

consequence of violating them would be eviction. "[T]he relevant question is whether, assuming the proprietor had and breached a duty to protect against certain criminal conduct, the kind of harm that occurred was a foreseeable result, or a probable or natural consequence of, that breach." *Ga. CVS*, 316 Ga. at 734 (II) (D) (1) (citation and punctuation omitted)."Giving [Fields] the benefit of all favorable inferences, we are persuaded that she has presented some evidence, however slight, that [Rainbow's] failure to [provide security] was a proximate contributing cause of [R. F.'s injuries]." *Underberg v. Southern Alarm*, 284 Ga. App. 108 (643 SE2d 374) (2007).

4. *Failure to warn*.

Fields argues that the trial court erred by granting summary judgment to Rainbow on the claim that Rainbow breached a duty to warn R. F. that it housed individuals from the Reentry Program. But "the failure to warn that [Fields] alleged in [the] complaint was not a separate basis for liability but rather a means by which [Rainbow] might have breached a duty of care it owed under a theory of premises liability." *Tomsic v. Marriott Intl.*, 321 Ga. App. 374, 385 (4) (739 SE2d 521) (2013). See also *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991) (analyzing claim of failure to warn within framework of premises liability cause of action);

11

*Benson-Jones v. Sysco Food Svcs. of Atlanta*, 287 Ga. App. 579, 584 (3) (651 SE2d 839) (2007) (noting, in analysis of premises liability claim, that "[a]s a general rule, an owner or occupier of land is liable to invitees for injuries they sustain as a result of his failure to warn them of dangers which he was aware of, or in the exercise of reasonable care should have known") (citation and punctuation omitted); *Crapp v. Elberta Crate & Box Co.*, 223 Ga. App. 902, 904-905 (479 SE2d 101) (1996) (describing defendant's failure to warn as breach of its duty of ordinary care in premises liability action).

5. *Breach of contract.*

Fields argues that the trial court erred in granting summary judgment on R. F.'s breach of contract claim. Because it appears the trial court overlooked this claim, we vacate the trial court's ruling on the breach of contract claim and remand.

Rainbow moved for summary judgment on all of Fields's claims, but in the brief in support of the motion, it did not address the breach of contract claim Fields had alleged in an amended complaint. Instead, Rainbow argued only that it was entitled to summary judgment on the tort claims and a claim for attorney fees. In his detailed order, the trial court granted Rainbow's motion for summary judgment,

12

which, as noted, was a motion for summary judgment on all of Fields's claims; the court did not address Fields's breach of contract claim.

The court "appears to have overlooked [this] additional theor[y] of recovery raised for the first time in [Fields's] amended complaint. . . . [W]e decline to address [this] ground[ ] on appeal because [it was] not ruled upon by the trial court." *Med. Center of Central Ga. v. City of Macon*, 326 Ga. App. 603, 607 (2) (757 SE2d 207) (2014). We therefore vacate the trial court's grant of summary judgment on the breach of contract claim, and we remand this case to the trial court to address it or to take other action not inconsistent with this opinion. Id. at 608 (2).

*Judgment reversed in part, vacated in part, and case remanded. Brown and Markle, JJ., concur in judgment only.*